867 P.2d 845

**In the Matter of a Member of the State Bar of Arizona, Roger Raymond MARCE, Respondent.**

No. SB–93–0072–D.

Comm. Nos. 87–0276, 88–0133 and 89–0064.

Supreme Court of Arizona.

Dec. 22, 1993.

Franzula M. Bacher, Pamela M. Overton, for respondent.

Allen B. Shayo, State Bar Counsel, Harriet L. Turney, Chief Bar Counsel, for the State Bar of Arizona.

### JUDGMENT AND ORDER

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal having been filed before the Court,

IT IS ORDERED, ADJUDGED AND DECREED that ROGER RAYMOND MARCE, a member of the State Bar of Arizona, is hereby censured for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that pursuant to Rule 52(a)(8), Rules of the Supreme Court of Arizona, the State Bar of Arizona is granted judgment against ROGER RAYMOND MARCE for costs incurred by the State Bar of Arizona in the amount of $1,212.40, together with interest at the legal rate from the date of this judgment.

### EXHIBIT A

### BEFORE THE DISCIPLINARY COMMISSION OF THE SUPREME COURT OF ARIZONA

Comm. Nos. 87–0276, 88–0133, and 89–0064

In the Matter of

ROGER RAYMOND MARCE,

a Member of the State

Bar of Arizona,

Respondent.

***DISCIPLINARY COMMISSION REPORT***

Filed Dec. 21, 1993.

This matter first came before the Disciplinary Commission of the Supreme Court of Arizona on December 12, 1992, pursuant to Ariz.R.Sup.Ct., Rule 56(a), for review of the Hearing Committee's recommendation of acceptance of the agreement for discipline by consent providing for censure. The Commission, by order filed February 22, 1993, rejected that recommendation and remanded the matter to the Hearing Committee for further proceedings.

This matter again came before the Disciplinary Commission on September 11, 1993, for review of the Hearing Committee's recommendation of acceptance of the same agreement for discipline by consent.

### *Decision*

Upon review of the record on appeal, the Commission, with six members concurring

and one dissenting,[1] adopts the Hearing Committee's recommendation that the agreement for discipline providing for censure be accepted, and orders the dismissal of Counts Two and Three. By the same vote, the Commission adopts the findings of fact and conclusions of law of the Hearing Committee.

### Facts

The amended complaint in this matter contains three counts. Count One concerns Respondent's dealing with Mr. and Mrs. A. In October 1984, Mr. and Mrs. A, who were clients of Respondent, were experiencing financial difficulties, and were delinquent with respect to several liens encumbering their home. The second lienholder had commenced foreclosure proceedings, and a date for sale was scheduled for the following month. In or around October, Mrs. A approached Respondent to ask if he knew of someone who would be willing to buy out the position of the second lienholder, so that the foreclosure sale could be postponed until Mr. and Mrs. A could sell the property themselves or arrange for new financing. Respondent was unable to find anyone. Mrs. A then asked Respondent if he would be willing to buy out the second lienholder himself. Respondent eventually agreed, and entered into an agreement, signed by both Mrs. A and Respondent, whereby Mr. and Mrs. A would pay Respondent and, in exchange, Respondent would buy out the bank and postpone the foreclosure until Mr. and Mrs. A sold the premises.

Although Respondent did memorialize the terms of the agreement in writing, he failed to document a number of important items. Respondent did not document his oral advice regarding the potential significance of his acquiring the ownership interests, he failed to document that Mr. and Mrs. A had had full disclosure concerning all aspects and ramifications of the agreement, and failed to document his oral advice that Mr. and Mrs. A seek the advice of independent counsel regarding the transaction with Respondent.

Respondent bought out the bank; however, Mr. and Mrs. A failed to sell the premises, and failed to make payments to Respondent, as promised. Respondent then pursued the foreclosure proceedings and purchased the property himself at a public sale involving competing bidders. Subsequently, Respondent sold the premises and made a profit.

The State Bar and Respondent have conditionally admitted that this conduct violated former Rule 29(a), DR 5–104(A), and Rule 42, ER 1.8(a).[2]

The State Bar has conditionally admitted that it cannot prove the allegations contained in Counts Two and Three by clear and convincing evidence, and the Committee recommended dismissal of these counts.

### Discussion of Decision

The Committee and Commission agree that Respondent violated DR 5–104(A) when he entered into a business transaction with Mr. and Mrs. A wherein they had differing interests, without documenting that the clients had full disclosure, and ER 1.8(a) when he acquired ownership interest adverse to Mr. and Mrs. A without transmitting, in writing, the potential legal significance of the transaction as well as his advice that they seek outside counsel.

Our Supreme Court has found that the American Bar Association's *Standards for Imposing Lawyer Sanctions* provide excellent guidance for determination of an appropriate sanction. *See, e.g., Matter of Petrie*, 154 Ariz. 295, 742 P.2d 796 (1987).

Standard 4.3 addresses conflicts of interest. Standard 4.33 provides for reprimand (censure in Arizona) when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, and causes injury or potential injury to a client. Respondent

---

1. Commissioners Bossé, Bonwell, and Malm did not participate in these proceedings. P. Michael Drake, of Tucson, participated as an ad hoc member. Commissioner Doyle dissented from the majority without comment.

2. As the conduct occurred both before and after February 1, 1985, both the former Code of Professional Responsibility and the current Rules of Professional Conduct apply.

has admitted his negligence in failing to document that his clients had fully consented to the transaction after full disclosure, and in failing to ensure that the clients had a reasonable opportunity to seek the advice of independent counsel.

The Commentary to Standard 4.33 states "The courts generally impose a [censure] when a lawyer engages in a single instance of misconduct involving a conflict of interest when the lawyer has merely been negligent and there is no overreaching or serious injury to a client." While the potential for injury to the clients did exist, the Commission notes that, in this instance, the clients actually benefitted from the agreement. The agreement stated that the clients were to make monthly payments to Respondent in exchange for his postponing the foreclosure. After Respondent bought out the position of the second lienholder, however, the clients failed to make any payments. Respondent allowed Mrs. A to remain in the house, rent-free, for five months, before he finally pursued the foreclosure and purchased the home himself. Even after purchasing the home, Respondent allowed Mrs. A to live there for some time without paying him any rent. It is apparent that Respondent went out of his way to assist his clients in this transaction.

The agreement between Respondent and Mr. and Mrs. A did not originate with Respondent. Rather, the transaction was made at Mrs. A's behest. She came to Respondent to ask for his help in finding a buyer. Mrs. A was well-versed in real estate, and fully understood the ramifications of the agreement. At the time Respondent agreed to buy out the bank, the intent of both he and his clients was that this was to be a short-term agreement and that, as soon as they were able, the clients would obtain substitute financing or sell the home. When, after five months, they had made no payments, Respondent finally foreclosed. Respondent did not enter into this agreement with the intent of obtaining any large benefit for himself. Rather, the purpose of the agreement was to help Mr. and Mrs. A. Had they been able to obtain substitute financing immediately, as planned, Respondent would have received little or no benefit from the transaction. The clients' own failure to uphold their part of the agreement is what led to Respondent's ultimate purchase of the property.

The Commission also reviewed Standards 9.22 and 9.32 on aggravation and mitigation. These are the factors that may justify an increase or decrease in the sanction to be imposed. Present in mitigation are absence of a prior disciplinary record, absence of a dishonest or selfish motive, full and free disclosure during and cooperative attitude toward the disciplinary proceedings, and delay in the disciplinary proceedings.[3]

The Committee found that the only possible aggravating factor is Respondent's substantial experience in the practice of law. However, in light of Respondent's clean disciplinary record, that could also be viewed as mitigation.

Respondent did not intend to harm his clients; on the contrary, he was trying to help them through a difficult time. The clients suffered no injury as a result; in fact, it enabled Mrs. A to live rent-free in her home for months. Although the Court has frowned on the idea of attorneys doing business with clients, it is not a breach of the ethical rules to do so. Respondent failed to strictly comply with those rules governing business transactions with clients, however. The Standards indicate that censure is appropriate, and the existing mitigating factors support that sanction. A sanction greater than censure would not fulfill the purpose of lawyer discipline, which is not to punish the offender, but to protect the public, the profession, and the administration of justice. *In re Neville*, 147 Ariz. 106, 708 P.2d 1297 (1985). The Commission recommends, therefore, that the agreement for discipline providing for censure be accepted, and orders the dismissal of Counts Two and Three.

RESPECTFULLY SUBMITTED this 4th day of November, 1993.

/s/ Mark D. Rubin

Mark D. Rubin, Vice Chair
Disciplinary Commission

---

3. The conduct at issue took place nearly ten years ago, and the conduct giving rise to the allegations of No. 88–0133 occurred over ten years ago. Although the Commission has ordered that that matter be dismissed, the delay involved is a mitigating circumstance.

HEARING COMMITTEE 6I
STATE BAR OF ARIZONA

Disc. Comm. Nos. 87–0276,
88–0133 and 89–00064

In the Matter of a Member of
the State Bar of Arizona

ROGER RAYMOND MARCE

Respondent.

## TENDER OF CONDITIONAL ADMISSIONS AND AGREEMENT FOR DISCIPLINE BY CONSENT

Filed Aug. 11, 1992.

Respondent and Bar counsel have agreed to resolve these matters by consent. Respondent conditionally admits to the facts and charges set forth below in exchange for the stated form of discipline.

### No. 87–0276

1. Respondent Roger Raymond Marce is a member of the State Bar of Arizona and licensed to practice law in Arizona.

2. In or around the Fall of 1983, Respondent was retained to represent Hawksley Machine Company, Inc. in a Chapter 11 bankruptcy proceeding.

3. Thereafter, Respondent was retained to represent Charleen Hawksley and Robert Hawksley in their individual capacities.

4. In or around June of 1984, Charleen Hawksley and Robert Hawksley owned a house located in Tempe, Arizona; this house was encumbered by three liens: (1) Century Bank had the first lien; (2) First Federal Savings held the second lien; and (3) the Small Business Administration held a third lien. The house was encumbered beyond the fair market value and was occupied by Charleen Hawksley.

5. The Hawksleys stopped making payments on the house sometime in 1983. In December, 1983, Century Bank scheduled a trustee's sale for the Hawksleys' residence for March 19, 1984. The Century Bank trustee's sale scheduled for March 19, 1984 was never held because First Federal Savings reinstated Century Bank's first lien position to protect its own interests.

6. After reinstating Century Bank's first lien position, First Federal scheduled a trustee's sale for June 26, 1984. The Hawksleys then filed bankruptcy invoking an automatic stay. First Federal continued its trustee's sale until August 23, 1984. On August 24, 1984, First Federal postponed the trustee's sale until September 24, 1984. On September 24, 1984, First Federal postponed its trustee's sale on or about November 2, 1984.

7. In September, 1984, Respondent, having received his clients' authority, entered into an agreement with Century Bank and First Federal whereby the Hawksleys stipulated to lifting of the stay in the Bankruptcy Court in exchange for their agreement to postpone the trustee's sale until October 31, 1984.

8. Thereafter, but prior to the trustee's sale scheduled for November 2, 1984, Charleen Hawksley approached the Respondent and inquired if he was interested in purchasing the position of the second lien holder, First Federal Savings. On October 23, 1984, before purchasing the interest of First Federal Savings, Respondent set forth in writing the financial obligations of his clients, Charleen Hawksley and Robert Hawksley, with respect to the obligations to pay the Respondent as second lien holder. Charleen Hawksley countersigned this letter confirming her financial obligations to the Respondent. After Charleen Hawksley countersigned this letter, Respondent purchased the interest of the second lien holder, First Federal Savings.

9. Thereafter, in March of 1985, Respondent maintained an action in foreclosure and acquired the title to the real property formerly owned by his clients. Respondent was the prevailing bidder at the resulting public sale which involved competing bidders. Thereafter, in or around late 1985, Respondent sold the real property formerly owned by his clients and Respondent realized a profit as a result of entering into a business transaction with his clients.

10. The conduct of the Respondent violated formal Rule 29(a) (DR 5–104(A)) in that he negligently entered into a business transaction with this clients wherein they had differing interests, without documenting that the clients had fully consented after full disclosure.

11. The Respondent subsequently violated Rule 42, Ariz.R.S.Ct. (ER 1.8(a)), by acquiring an ownership interest adverse to his clients without confirming and transmitting, in writing, to the clients his oral advice and the potential legal significance of his acquiring the ownership interests in a manner which would reasonably be understood by the clients. Respondent further violated Rule 42, Ariz.R.S.Ct. (ER 1.8(a)), by failing to disclose, in writing, his oral advice that they to seek other counsel, thereby failing to assure that the clients had a reasonable opportunity to seek the advice of independent counsel.

### No. 88–0133

12. With respect to the allegations in Count Two of the Complaint filed herein, the State Bar conditionally concedes that it could not prove the allegations of this Count by clear and convincing evidence should this matter proceed to a hearing.

### No. 89–0064

13. With respect to the allegations in Count Three of the Complaint filed herein, the State Bar conditionally concedes that it could not prove the allegations of this Count by clear and convincing evidence should this matter proceed to a hearing.

### DISCIPLINE CONSENTED TO

14. Respondent, Roger Raymond Marce, and Bar counsel agree that Respondent shall receive a censure for the violations detailed above.

15. The Respondent, by entering into this consent agreement, waives his right to a hearing pursuant to Rule 53(c)(2). Respondent waives all motions, defenses, objections or requests which he has made or raised, or could assert thereafter, and the stated form of discipline is approved.

16. The Respondent states that his agreement with admissions is submitted freely and voluntarily and not under coercion or intimidation. The Respondent states he is aware of the Rules of the Supreme Court with respect to discipline and reinstatement.

17. Respondent has been advised by Bar counsel to seek the assistance of counsel before signing the agreement.

18. Respondent and Bar counsel shall each have the opportunity to prepare a memorandum in support of this agreement to be submitted to the Hearing Committee.

19. Respondent shall pay all costs and expenses incurred by the State Bar in connection with No. 87–0276.

DATED this 10th day of August, 1992.

/s/ Roger Raymond Marce
Roger Raymond Marce
Respondent

DATED this 11th day of August, 1992.

/s/ Pamela M. Overton
Pamela M. Overton
Counsel for Respondent
/s/ Allen B. Shayo
Allen B. Shayo
Bar Counsel